UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                        :

EVELYN ALVAREZ,                :
                                          :

                        Plaintiff,     :

                                          :                 20-CV-255 (VSB)

           - against -        :

                                          :        **OPINION & ORDER**

NEW YORK CITY DEPARTMENT OF     :
EDUCATION et al.,              :

                                        :

                        Defendants.  :

                                          :
-------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _4/15/2021_

Appearances:

Rudy Artin Dermesropian
Rudy A. Dermesropian, LLC
New York, NY
*Counsel for Plaintiff*

Abed Z. Bhuyan
New York City Law Department
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Evelyn Alvarez ("Plaintiff" or "Alvarez") brings this civil rights action pursuant

to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; Title VII of the

Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*; New York State

Human Rights Law ("NYSHRL"), New York State Executive Law § 296 *et seq.*; and the New

York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 *et

seq.* Before me is the motion to dismiss Plaintiff's Complaint brought by Defendant New York

City Department of Education ("DOE" or "Defendant").  For the reasons that follow, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I.     **Factual Background**[1]

Plaintiff is a 49-year-old woman who resides in Queens, New York.  (Compl. ¶ 2.)[2] Plaintiff was first employed by DOE on or about September 16, 1992, and has more than 27 years of teaching experience with DOE.  (*Id.* ¶¶ 21, 26.)  During her tenure with DOE, Plaintiff has not received any unsatisfactory evaluations.  (*Id.* ¶ 45.)  In 1996, Plaintiff became a regular teacher at P.S. 257 John F. Hylan ("P.S. 257") in Brooklyn, New York, and in September 2006, she became a "sub-teacher" at the school.  (*Id.* ¶ 22.)  In 2015, after she received her Master's Degree, Plaintiff became a teacher of English as a New Language ("ENL") at P.S. 257.  (*Id.* ¶ 23.)  From 2015 until about January 10, 2019, P.S. 257 offered two ENL classes—one taught by Plaintiff and the other taught by "a much younger male teacher, Jose Martinez ("Martinez"), who has significantly less seniority than Plaintiff."[3]  (*Id.* ¶ 25.)  On or about January 10, 2019, Defendant Brian Leavy DeVale ("DeVale"), Principal of P.S. 257, canceled Plaintiff's ENL class and had her instead teach a K-1 class, where she would not be using her ENL license or Master's Degree.  (*Id.* ¶¶ 27, 29.)  Martinez's ENL class was not canceled.  (*Id.* ¶ 28.)  Immediately following the cancellation of Plaintiff's ENL class, DeVale, Martinez, and an Assistant Principal began to harass Plaintiff "by continuously watching her and even following her."  (*Id.* ¶ 32.) DeVale also often walked into Plaintiff's classroom during the day "in an intimidating and abrupt manner," and/or stood in front of Plaintiff's door to intimidate her.  (*Id.* ¶¶ 33–34.)  In

---

[1] The facts set forth herein are taken from the allegations contained in the Complaint.  (Doc. 1.)  I assume Plaintiff's allegations in the Complaint to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Compl." refers to Plaintiff's Complaint filed on January 10, 2020.  (Doc. 1.)

[3] The Complaint does not specify Martinez's age.

addition, around this time, DeVale would frequently call Plaintiff into his office and yell at her without giving her the opportunity to respond.  (*Id.* ¶ 35.)  Plaintiff complained to DeVale and DOE through her union that her ENL class was being canceled while Martinez, a younger man with less experience, did not lose his ENL class.  (*Id.* ¶¶ 31, 37.)  She also repeatedly asked DeVale "to stop his acts of harassment and unlawful favoritism."  (*Id.* ¶ 36.)

On April 30, 2019, Plaintiff had knee surgery stemming from an injury on a school bus and required about 26 days to recover from surgery.  (*Id.* ¶ 38.)  She returned to work on June 10, 2019.  (*Id.* ¶ 39.)  On June 12, 2019, Defendants extended Plaintiff's probation agreement by one year, preventing her from obtaining tenure.  (*Id.* ¶¶ 40–41.)  On June 17, 2019, Plaintiff was given an excess letter for the first time in her career.  (*Id.* ¶ 44.)  On June 19, 2019, Plaintiff complained through her union that she was being "harassed" "because [she] had [knee] surgery." (*Id.* ¶ 46.)  Defendants' harassing behavior toward Plaintiff has continued, and since Plaintiff began complaining, DeVale's attitude toward her has become more adversarial.  (*Id.* ¶¶ 47–48.) DeVale denied Plaintiff's grievance for lost prep time on January 7, 2020.  (*Id.* ¶ 47.)

On September 11, 2019, Plaintiff submitted an Intake Questionnaire to the United States Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 20.)  The next day, she filed a Notice of Claim with DOE.  (*Id.*)  On December 31, 2019, Plaintiff filed a Charge of Discrimination with the EEOC.  (*Id.*)  On January 3, 2020, the United States Department of Justice ("DOJ") issued Plaintiff a Notice of Right to Sue.  (Doc. 1-1.)

## II.   <u>Procedural History</u>

Plaintiff filed the complaint on January 10, 2020 against DOE, DeVale, John and Jane Does 1-10 ("Does"), and XYZ Corp. 1-10 ("XYZ," and together with Does, "Unnamed Defendants").  (Doc. 1.)  The Complaint alleges, under federal, state, and local laws, three counts

of age discrimination, (Counts 1-3), three counts of sex or gender discrimination, (Counts 4-6), three counts of disability discrimination, (Counts 7-9), and five counts of retaliation, (Counts 10-14). (*Id.*)  On April 29, 2020, Defendant DOE moved to dismiss the complaint, supported by a memorandum of law and a declaration with exhibits. (Docs. 10–12.)  On June 12, 2020, Plaintiff submitted her memorandum of law in opposition to Defendant's motion to dismiss, with accompanying declarations and exhibits. (Doc. 15–17.)  This motion became fully briefed when Defendant filed its reply memorandum of law on July 6, 2020. (Doc. 20.)[4]

### III.  Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a

---

[4] On January 26, 2021, I dismissed DeVale from the case without prejudice because Plaintiff failed to serve him in a timely manner.  (Doc. 27.)

formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal

quotation marks omitted).  Although all allegations contained in the complaint are assumed to be

true, this tenet is "inapplicable to legal conclusions."  *Id.*  A complaint is "deemed to include any

written instrument attached to it as an exhibit or any statements or documents incorporated in it

by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l

Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

IV.   **Discussion**

A.   *Waiver of Claims*

Defendant first argues that Plaintiff waived all of her claims prior to June 12, 2019,

because she signed a release on that date purporting to waive any and all claims against

Defendant.  (Doc. 11, at 5–6.)  On that date, Plaintiff signed an agreement that extended her

probation by one year.  (Doc. 12, Ex. C.)  The agreement states that Plaintiff "waives any rights,

claims, or causes of action and agrees not to commence any claims, motions, actions or

proceedings of whatever kind against . . . the Department of Education . . . or any of [its] agents

or employees for any actions taken or not taken, or statements made or not made by them prior to

the date of this agreement."  (*Id.*)  The agreement also states that Plaintiff "does not waive by

terms of this agreement any right, cause of action, claim or defense arising subsequent to the date

of this agreement."  (*Id.*)  Finally, the document affirms that Plaintiff "had an opportunity to seek

legal counsel" in advance of signing the agreement and "entered into this agreement freely,

knowingly and openly, without coercion or duress."  (*Id.*)

"[A] release that is clear and unambiguous on its face and which is knowingly and

voluntarily entered into will be enforced."  *Pampillonia v. RJR Nabisco. Inc.*, 138 F.3d 459, 463

(2d Cir. 1998).  "In the employment context, whether an employee signed a waiver knowingly

5

and voluntarily is assessed in light of the totality of the circumstances," particularly

> (1) the plaintiff's education and business experience; (2) the amount of time that the plaintiff had possession of or access to the agreement before signing it; (3) the plaintiff's role in deciding the terms of the waiver agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by or consulted with an attorney prior to signing the agreement; (6) whether the consideration given to the plaintiff in exchange for the waiver exceeds the employee benefits to which the plaintiff was already entitled by contract or law; (7) whether the employer encouraged or discouraged the plaintiff to consult with an attorney; and (8) whether the plaintiff had a fair opportunity to consult with an attorney prior to signing the agreement.

*Miller v. N.Y.C. Dep't of Educ.*, 71 F. Supp. 3d 376, 381–82 (S.D.N.Y. 2014); *see also Bormann v. AT&T Commc'ns, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989) (setting out totality-of-circumstances test). At this stage of the case, I cannot find that Plaintiff waived her claims prior to June 12, 2019 through this release, because the factual record needs to be developed in order for me to make a determination concerning whether or not Plaintiff signed the release knowingly and voluntarily.

As a preliminary matter, Plaintiff has not waived her ADEA claim. Federal law sets out several requirements for purported waivers of ADEA claims. *See* 29 U.S.C. § 626(f). To properly waive an individual's ADEA claims, a release must 1) give the Plaintiff "enough time to consider her options," 2) give the Plaintiff "seven days after she signed the release to change her mind," and 3) make "specific reference to claims under the ADEA." *Oubre v. Entergy Operations*, 522 U.S. 422, 424–25 (1998) (citing 29 U.S.C. § 626(f)). The waiver at issue here makes no reference to the ADEA, and there is no indication that Plaintiff had seven days after signing the release to change her mind. (*See* Doc. 12, Ex. C.) In its reply brief, Defendant appears to concede this point, "acknowledg[ing] that plaintiff's ADEA claims may not have been waived." (Doc. 20, at 9.)

The analysis is a much closer call with regard to Plaintiff's other claims arising earlier

than June 12, 2019.  The first factor weighs in favor of Defendant, because Plaintiff's 27 years of

teaching experience and her Master's Degree give her sufficient education and experience.

Plaintiff argues that she has no experience with these waivers or broader legal experience.  (Doc.

15, at 8.)  However, the law does not require such experience; courts have upheld waivers signed

by public school teachers with less experience at DOE.  *See United States v. N.Y.C. Dep't of*

*Educ.*, 407 F. Supp. 3d 365, 414 (S.D.N.Y. 2018) ("Riccardo's education and business

experience, a bachelor's degree and seven years of employment for the DOE, in the capacity as

teacher and assistant principal, supports the proposition that he was fully capable of

understanding the stipulation's terms.") (internal citations omitted); *Williams v. Dep't of Educ.*,

No. 19cv980, 2016 WL 4574928, at *4 (S.D.N.Y. Sept. 1, 2016) (finding that plaintiff's more-

than twenty years of teaching experience indicated that plaintiff signed the waiver knowingly

and voluntarily).

        I cannot make a determination with regard to the second factor at this time, because

neither party actually knows how long Plaintiff had access to the agreement before signing it.

(*See* Doc. 11, at 5–6; Doc. 15, at 8.)  I similarly cannot make a definitive determination

concerning the third factor, because neither party knows with certainty whether Plaintiff had any

role in deciding the terms of the agreement.  (*See* Doc. 11, at 5–6; Doc. 15, at 9.)  However, it

appears from the face of the agreement—which has an official DOE letterhead, (*see* Doc. 12, Ex.

C)—that it is a standard form that Defendant had prepared and which Plaintiff had little role in

creating.  The fourth factor weighs in favor of Defendant.  The one-and-a-half-page agreement is

short and written in clear language.  While the agreement does not reference any specific laws, it

plainly "waives any rights, claims, or causes of action" against DOE "prior to the date of this

agreement."  (*Id.*)  This concise, clear waiver is similar to other waivers that have previously

been upheld.  *See, e.g.*, *Leftridge v. N.Y.C. Dep't of Educ.*, No. 17cv7027, 2020 WL 1503665, at

*6 (S.D.N.Y. Mar. 30, 2020) ("The documents were written in plain English and cover 'any and

all claims, liabilities or causes of action . . . based upon anything that has happened up to' the

date of the execution of the contract."); *Charlery v. Dep't of Educ. of City of N.Y.*, No. 15-CV-

7994 (JPO), 2017 WL 2124447, at *3 (S.D.N.Y. May 5, 2017) (upholding waiver that "clearly

waives all claims against DOE, and does so in language broad enough to unambiguously include

the claims raised in this action"); *Laramee v. Jewish Guild for Blind*, 72 F. Supp. 2d 357, 360

(S.D.N.Y. 1999) (upholding release in part because "it is a mere three pages of text and is written

in plain English" and because the terms "state plainly and simply that plaintiff is waiving her

right to bring any action against [employer] pertaining to the conditions or termination of her

employment").

The fifth factor also favors Defendant.  Plaintiff acknowledges that her union

representative signed the agreement.  (Doc. 15, at 9).  "The general rule is that union

representation satisfies the fifth *Bormann* factor."  *United States*, 407 F. Supp. 3d at 416 (internal

quotation marks omitted).  There is no reason to make an exception absent "evidence suggesting

that [the union representative] did not participate in negotiations," *Mandavia v. Columbia Univ.*,

No. 12 Civ. 2188(JPO), 2013 WL 2391695, at *9 (S.D.N.Y. June 3, 2013), which Plaintiff has

not alleged here.

The sixth factor favors Plaintiff.  "A release is not supported by sufficient consideration

unless something of value is received to which [the employee] had no previous undisputed

right."  *Id.* at *10 (internal quotation marks omitted).  There is no evidence here that Plaintiff

received anything of value for her signature.  Indeed, Plaintiff wrote at the bottom of the

agreement that her "signature represents avoidance of termination only."  (Doc. 12, Ex. C.)  This

is in stark contrast to other instances in which signatories have received significant monetary benefits as consideration for signing releases.  *See Leftridge*, 2020 WL 1503665, at *7 (finding that plaintiff received $5,000 for signing the waiver); *Charlery*, 2017 WL 2124447, at *3 ($35,000); *Mandavia*, 2013 WL 2391695, at *10 (additional salary and a letter of recommendation).

The seventh factor also appears to favor Plaintiff.   "There is no record evidence that Plaintiff was encouraged to meet with an attorney and, unlike in some other cases from this district, the Agreement itself does not offer that advice."  *Mandavia*, 2013 WL 2391695, at *10. Finally, the eighth factor favors Defendant, given that the release states that Plaintiff "affirm[ed] that [she] had an opportunity to seek legal counsel throughout these proceedings."  (Doc. 12, Ex. C.)

"[T]he validity of a release is a peculiarly fact-sensitive inquiry."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437–38 (2d Cir. 1998).  Consequently, courts have cautioned against dismissing claims based on waiver where they "cannot determine from the pleadings alone . . . whether the waivers are enforceable."  *McCormack v. IBM*, 145 F. Supp. 3d 258, 275 (S.D.N.Y. 2015); *see also O'Grady v. Middle Country Sch. Dist. No. 11*, 556 F. Supp. 2d 196, 201 (E.D.N.Y. 2008) ("the plaintiff must have the opportunity to conduct discovery in this case in order for the Court to determine whether the waiver was knowing and voluntary under the totality of the circumstances").  Here, the pleadings and briefs are inconclusive as to the second and third factors, and therefore the factual record needs to be further developed to determine how long Plaintiff had to review the agreement before signing it and what input, if any, she had on the terms of the agreement.  Because of this, and because several *Bormann* factors favor both parties such that the analysis is currently inconclusive, I cannot find at this

time that Plaintiff knowingly and voluntarily signed the waiver.

### B.  *Notice of Claim*

NYSHRL and NYCHRL claims brought against DOE must satisfy the notice-of-claim

requirements set out in New York Education Law § 3813(1).  That statute provides:

> No action or special proceeding, for any cause whatever, . . . shall be prosecuted
> or maintained against any school district, board of education, . . . or any officer of
> a school district, [or] board of education . . . unless it shall appear by and as an
> allegation in the complaint or necessary moving papers that a written verified
> claim upon which such action or special proceeding is founded was presented to
> the governing body of said district or school within three months after the accrual
> of such claim.

N.Y. Educ. L. § 3813(1); *see also Marino v. Chester Union Free Sch. Dist.*, 859 F. Supp. 2d 566,

570 (S.D.N.Y. 2012) ("Section 3813(1) of [the] New York State Education Law provides that no

action may be maintained against a school district unless notice of claim was served within three

months of the date on which the claim accrued.").  "It is well settled in the Second Circuit that

Education Law § 3813(1) is a statutory condition precedent to a plaintiff's bringing of a

proceeding against a school district or board of education, and a plaintiff's failure to comply is a

fatal defect mandating dismissal of the action."  *Nelson v. Mount Vernon School Dist.*, No. 15-

CV-8276, 2017 WL 1102668, at *3 (S.D.N.Y. Mar. 23, 2017) (internal quotation marks

omitted).

Defendant argues that Plaintiff's state and local claims fail this notice-of-claim

requirement for two reasons.  First, Defendant argues that Plaintiff's notice of claim for her

disability claims is insufficient because, while Plaintiff's notice explicitly references

"[d]iscrimination and harassment based on Claimant's *age and gender*," (Doc. 12, Ex. D)

(emphasis added), the notice is "completely devoid of any claim that she was discriminated

against on account of her purported disability," (Doc. 11, at 20.)  Defendant is correct.  Plaintiff

does not rebut the fact that her notice of claim fails to mention any disability claim.  Where, as here, notice of claim is required, a plaintiff "may not raise in the complaint causes of action or legal theories that were not directly or indirectly mentioned in the notice of claim and that change the nature of the earlier claim or assert a new one." *Rojas v. Hazzard*, 97 N.Y.S.3d 177, 177 (2d Dep't 2019) (internal quotation marks omitted); *see also Mill Street Partners, LLC v. City of Newburgh*, 18 CV 5465 (VB), 2019 WL 4274212, at *7 (S.D.N.Y. Sept. 9, 2019) ("Any cause of action or theory of liability not directly or indirectly mentioned in the notice of claim may not be included in a subsequent lawsuit.") (quoting *Fincher v. County of Westchester*, 979 F. Supp. 989, 1003 (S.D.N.Y. 1997)).  Because Plaintiff failed to adequately provide notice of her disability theory, her state and local disability claims are barred.

Second, Defendant argues that Plaintiff's notice is untimely as to her sex and age discrimination claims.  Plaintiff indicates that her age and sex discrimination claims accrued on January 10, 2019, when she lost her ENL class.  (Compl. ¶¶ 27, 29.)  Yet Plaintiff did not file her notice of claim with DOE until September 12, 2019, (*id.* ¶ 20)—much later than the three months required under § 3813(1).  Thus, Defendant asks me to dismiss Plaintiff's state and local claims for sex and age discrimination accruing before June 14, 2019.  Plaintiff makes several unsuccessful attempts to argue that her state and local age and sex discrimination claims accruing before June 14, 2019 are not barred by the notice-of-claim requirement.  Plaintiff notes that "[t]he limitations period is tolled during the pendency of a complaint before an administrative body," (Doc. 15, at 23), but makes no reference to any such administrative complaint until September 2019, (*see* Compl. ¶ 20)—months after the limitations period had already run on her age and sex discrimination claims.  Plaintiff also suggests that her EEOC charge constitutes compliance with § 3813(1), (Doc. 15, at 25), but "courts have repeatedly declared" that an EEOC

charge cannot "be considered a substitute for a notice of claim" under state law.  *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006).  Finally, Plaintiff argues that notice of claim is unnecessary when vindicating a public right.  (Doc. 15, at 24–25.)  But such an exception does not apply where "plaintiff's complaint sought to vindicate . . . only [her] private interest."  *Picciano v. Nassau Cty. Civil Serv. Comm'n*, 736 N.Y.S.2d 55, 58 (2d Dep't 2001).  There is nothing in Plaintiff's complaint that suggests any goal beyond vindicating her own rights.

Therefore, I must dismiss Plaintiff's state and local disability discrimination claims entirely, and dismiss Plaintiff's state and local age and sex discrimination claims that accrued before June 14, 2019.

## C.  *ADA*

To establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job with or without accommodation; and (4) she suffered an adverse employment action because of her disability." *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 Fed. App'x 123, 127 (2d Cir. 2019).  "A person has a 'disability' under the ADA if she has:  (a) 'a physical or mental impairment that substantially limits one or more of [her] major life activities'; (b) 'a record of such an impairment'; or (c) is 'regarded as having such impairment.'"  *Jones v. N.Y.C. Transit Auth.*, 838 F. App'x. 642, 644 (2d Cir. 2021) (quoting 42 U.S.C. § 12102).  "The definition of disability [under the ADA] shall be construed in favor of broad coverage."  42 U.S.C. § 12102(4)(A).  In determining whether an individual qualifies under the first provided definition of "disability" under the ADA, a court must determine 1) whether plaintiff has a "physical [or

mental] impairment," 2) "identify the life activity upon which [plaintiff] relies … and determine whether it constitutes a major life activity under the ADA," and 3) ask "whether the impairment substantially limited the major life activity."  *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

Here, Plaintiff's ADA claim fails because any impairment alleged in the complaint has not substantially limited any of Plaintiff's major life activities.  Plaintiff alleges that she had knee surgery on April 30, 2019, and was forced to miss work for about 26 days to recover, returning to work on June 10, 2019.  (Compl. ¶¶ 38–39.)  Plaintiff in her opposition brief claims that "she has limitations of one or more major life activities," (Doc. 15, at 17), but did not make any allegations in her complaint that any impairment limited her life activities after she returned to work on June 10, 2019.  As such, Plaintiff's alleged injury, if anything, amounts to a "a temporary impairment . . . too short in duration to be substantially limiting."  *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316–17 (2d Cir. 1999) (internal quotation marks omitted).  This Circuit has rejected disability claims for individuals that have been unable to work for periods far longer than the time Plaintiff has alleged here.  *See id.* (affirming summary judgment to defendant on ADA claim where plaintiff was unable to work for three-and-a-half months); *Colwell v. Suffolk Cty. Police Dep't*, 158 F.3d 635, 646 (2d Cir. 1998) ("a seven-month impairment of his ability to work, with the non-particularized and unspecific residual limitations described on his police work, is of too short a duration and too vague an extent to be 'substantially limiting'"); *see also Holmes v. N.Y.C. Dep't of City Wide Admin. Servs.*, No. 14-cv-8289 (KBF), 2015 WL 1958941, at *4 (S.D.N.Y. Apr. 30, 2015) (finding that plaintiff who was out on approved leave for nearly six months due to knee injury was not substantially limited in any major life activity).

Plaintiff's complaint contains no allegations to support either of the other findings necessary to establish her disability—that her employer regarded her as impaired or that she provided a record of the impairment, *see* 42 U.S.C. § 12102(1)—nor does she mention or advance either theory in her opposition brief.  Therefore, Plaintiff has not plausibly alleged any theory of disability discrimination under the ADA.

### D.  *Title VII and ADEA*

The parties appear to disagree at times about the proper legal standard for evaluating Plaintiff's federal sex and age discrimination claims at the motion-to-dismiss stage.  Under the *McDonnell Douglas* framework, a plaintiff seeking to establish a prima facie case of employment discrimination claim must establish "(1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination."  *Tubo v. Orange Reg'l Med. Ctr.*, 690 Fed. App'x 736, 738 (2d Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  The Supreme Court has clarified that *McDonnell Douglas* is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  In *Swierkiewicz*, the Supreme Court stated that, at the pleading stage, a plaintiff "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Id.* at 512 (internal quotation marks omitted); *see also Boykin v. KeyCorp*, 521 F.3d 202, 212–14 (2d Cir. 2008).

However, the Second Circuit later noted some tension between the standard articulated in *Swierkiewicz* and the subsequent "plausibility" pleading standard articulated in *Iqbal*, in which the Supreme Court found that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

556 U.S. at 678.  In harmonizing these two decisions, the Second Circuit determined that "absent direct evidence of discrimination," a plaintiff at the pleading stage must plausibly allege that she is 1) "a member of a protected class," 2) "was qualified" for the position, 3) "suffered an adverse employment action," and 4) "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015).  With regard to the last factor, plaintiffs "need only give plausible support to a minimal inference of discriminatory motivation." *Id*.  Accordingly, I will examine Plaintiff's Title VII and ADEA claims under the *Littlejohn* framework.

### 1.   Whether Plaintiff is a Member of Protected Class

Plaintiff is a member of the protected class under both statutes.  The ADEA applies to individuals "at least 40 years of age." 29 U.S.C. § 631(a).  Plaintiff is 49 years old.  (Compl. ¶ 2.)  Plaintiff also qualifies under Title VII as a woman alleging employment discrimination on the basis of sex.  *See* 42 U.S.C. § 2000e.

### 2.   Whether Plaintiff is Qualified for the Position

Defendant does not directly challenge Plaintiff's qualifications.  (*See* Doc. 11.)  The facts, taken as true from the complaint, indicate that Plaintiff had 27 years of teaching experience at DOE, received a Master's Degree, taught an ENL class for years, and had not received a single unsatisfactory evaluation during her career at DOE.  (Compl. ¶¶ 23, 25–26, 43, 45.)  These allegations are more than sufficient to determine that Plaintiff is qualified for the position for purposes of the motion to dismiss.

### 3.   Whether Plaintiff Suffered an Adverse Employment Decision

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  An adverse employment action is

one which is more disruptive than a mere inconvenience or an alteration of job responsibilities."
*Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (internal citations and quotation marks
omitted).  "A materially adverse change might be indicated by a termination of employment, a
demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of
benefits, significantly diminished material responsibilities, or other indices . . . unique to a
particular situation."  *Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 304
(2d Cir. 2017) (citing *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).

     Here, Plaintiff has adequately alleged three separate adverse employment decisions.
First, Plaintiff has alleged that she was denied tenure and had her probation extended, seemingly
without any consideration.  (Compl. ¶¶ 40–41.)   The Second Circuit has recently determined in
an analogous case that "[d]enying [plaintiff] tenure and extending his probation was an adverse
employment action."  *Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015).  The Court explained
that tenured teachers can be terminated only for cause, whereas probationary teachers can be
"terminated for any lawful reason.  The denial of tenure therefore was the denial of a material
improvement in the conditions of the plaintiff's employment."  *Id.* at 436 (internal citations
omitted).  *Tolbert*'s holding applies in equal force here.

     Second, Plaintiff alleges that she was issued an excess letter.  (Compl. ¶ 44.)  Plaintiff's
complaint is a little unclear as to the effect of the excess letter, given that the complaint indicates
that Plaintiff is still employed at P.S. 257 months after receiving the letter.  Regardless, the
Second Circuit has determined that "notice of termination itself constitutes an adverse
employment action, even when the employer later rescinds the termination."  *Shultz*, 867 F.3d at
305–06.  I note that further factfinding is needed to determine the precise effect of the excess
letter and, to the extent it was rescinded, whether "the period of time between [the] notice of

firing and its rescission [would be] so short as to render the termination *de minimis*" and therefore not an adverse employment decision. *Id.* at 306; *see also id.* at 307 (finding that the fact that two weeks elapsed between the notice of termination and the rescission of that termination was sufficiently long to constitute an adverse employment decision). Still, at the pleading stage, Plaintiff's allegation that she was issued an excess letter is sufficient to survive a motion to dismiss.

Third, Plaintiff alleges that her ENL class was canceled and that she was instead forced to teach a K-1 class, where she would not be using her ENL license or Master's Degree. (Compl. ¶¶ 27, 29.) While this does not necessarily constitute a "demotion" because Plaintiff does not allege that it came with "a decrease in wage or salary," *Shultz*, 867 F.3d at 304, Plaintiff plausibly alleges that this decision "resulted in a less distinguished title and significantly diminished material responsibilities," which is sufficient to "constitute[] an adverse employment action," *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (internal quotation marks omitted). Plaintiff has thus plausibly alleged that she suffered several adverse employment decisions.

### 4.   Whether Plaintiff Alleged Minimal Support That the Employer Was Motivated by Discriminatory Intent

"The Second Circuit has not created an unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision." *Henny v. N.Y. State*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012) (internal quotation marks omitted). That said, "the level of proof a plaintiff is required to present in order to establish a *prima facie* case of discrimination is low." *De La Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996). Plaintiff does not, and need not, allege "direct evidence of discriminatory animus." *Henny*, 842 F. Supp. 2d at 553. "A victim of discrimination is . . .

seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991).

In the Second Circuit, "[a] showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case" of employment discrimination. *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted); *see also D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (finding that "circumstances [gave] rise to an inference of discrimination" where plaintiff was rejected for a job twice in favor of those younger than him); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) ("A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably.").

Here, Plaintiff has alleged a similar theory of disparate treatment related to an adverse employment decision:  she lost her ENL class, resulting in significantly reduced responsibilities, while a younger male teacher with less experience retained his.  *See* (Compl. ¶¶ 25–29.)  Such allegations sufficiently establish an inference of discrimination for purposes of surviving a motion to dismiss.[5]  Defendant claims that Plaintiff has not properly alleged that Martinez and Plaintiff are "similarly situated in all material respects," meaning that Plaintiff cannot properly establish a prima facie claim based on disparate treatment.  (Doc. 11, at 8) (quoting *Day v. City*

---

[5] I note that the Second Circuit case law is not entirely clear as to whether there must be a clear nexus between the adverse employment decision and the inference of discrimination.  This ambiguity does not directly affect the overall outcome here, where Plaintiff has alleged a clear link between the loss of her ENL class and the inference of age and gender discrimination.  However, Plaintiff's complaint does not establish a clear link between her other two alleged adverse employment decisions—the denial of tenure and extension of probation and the issuance of the excess letter—and any inference of discrimination.

*of N.Y.*, No. 15 Civ. 4399 (GDH)(HBP), 2015 U.S. Dist. LEXIS 161206, at *45 (S.D.N.Y. Nov. 30, 2015)).  Yet *Day* itself notes that "[o]rdinarily, whether two employees are similarly situated . . . presents a question of fact,' rather than a legal question to be resolved on a motion to dismiss."  *Day*, 2015 U.S. Dist. LEXIS 161206, at *46 (quoting *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)).  The parties' disagreement over Plaintiff's and Martinez's relative qualifications and experience levels are factual disputes that should not be decided at this stage. Plaintiff's allegations, taken as true as is required for purposes of deciding Defendant's motion to dismiss, are sufficient to establish a prima facie case of an inference of discrimination.

E.     *NYSHRL and NYCHRL Sex and Age Discrimination Claims*

As noted above, Plaintiff's state and local sex and age discrimination claims accruing before June 14, 2019 must be dismissed because they were untimely based on Plaintiff's notice of claim.  However, because Plaintiff filed a notice of claim with DOE on September 12, 2019, (Compl. ¶ 20), I must address Plaintiff's NYSHRL and NYCHRL sex and age discrimination claims accruing after June 14, 2019.

I evaluate Plaintiff's NYSHRL claims under the same framework as I analyzed her ADEA and Title VII claims.  *See Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010) ("We review discrimination claims brought under the NYSHRL according to the same standards that we apply to Title VII discrimination claims."); *Abrahamson v. Bd. of Educ.*, 374 F.3d 66, 70 n.2 (2d Cir. 2004) ("Since the New York Human Rights Law statute mirrors the requirements of the ADEA, violation of one necessarily implies violation of the other.").  Accordingly, Plaintiff must establish that she suffered an adverse employment decision after June 14, 2019.  Plaintiff has done so, because she was issued her excess letter on June 17, 2019, (Compl. ¶ 44), which almost certainly constitutes an adverse employment decision even if

the excess letter was ultimately rescinded, *see Shultz*, 867 F.3d at 305–06.  Plaintiff's excess

letter, on its own, constitutes an adverse employment action, satisfying her burden under

NYSHRL at the motion-to-dismiss phase with regard to these later claims.  Given that Plaintiff's

claims under NYCHRL must be construed in a "broader" fashion than her state and federal

claims, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013),

Plaintiff's NYCHRL sex and age discrimination claims accruing after June 14, 2019 may also

move forward.

### F.   *Retaliation*

"The anti-retaliation provisions in Title VII, the ADEA, the ADA, and the NYSHRL

contain nearly identical language and are analyzed under the same framework."  *Shih v.*

*JPMorgan Chase Bank, N.A.*, No. 10 Civ. 9020(JGK), 2013 WL 842716, at *5 (S.D.N.Y. Mar.

7, 2013).  Under the Second Circuit retaliation standard, "the plaintiff must plausibly allege that:

(1) defendants discriminated—or took an adverse employment action—against him, (2) because

he has opposed any unlawful employment practice."  *Vega v. Hempstead Union Free Sch. Dist.*,

801 F.3d 72, 90 (2d Cir. 2015) (internal quotation marks omitted).  In other words, "a plaintiff

must show '(1) she engaged in an activity protected by the [statute]; (2) the employer was aware

of this activity; (3) the employer took an adverse employment action against her; and (4) a causal

connection exists between the alleged adverse action and the protected activity,' that is, the

employer acted with a retaliatory motive."  *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d

528, 542 (S.D.N.Y. 2014) (quoting *Caskey v. Cty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014)

(summary order)).  Plaintiff has satisfied the prima facie retaliation requirements under the sex

and age discrimination statutes, but has fallen short in establishing retaliation under the disability

discrimination statutes.

### 1.   Age and Sex Discrimination Retaliation

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."  *Melie v. EVCI/TCI College Admin.*, 374 Fed. App'x 150, 153 n.* (2d Cir. 2010) (internal quotation marks omitted).  "[T]o establish participation in a protected activity, a plaintiff is required to show not an actual violation of the act, but only that he was acting under a good faith, reasonable belief that such a violation existed."  *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp.2d 381, 397 (S.D.N.Y. 2011) (internal quotation marks omitted).  Here, Plaintiff alleges that she complained directly to Defendant DeVale and to Defendant DOE through her union on many occasions between January 2019 and June 2019 on grounds that "Martinez, who is significantly younger, a male, and does not have nearly the same number of years in experience is still allowed to teach his ENL class."  (Compl. ¶ 37.)  These allegations satisfy the first two requirements for a prima facie retaliation case for Plaintiff's age and sex discrimination claims, because Plaintiff alleges that she put Defendants on notice, with at least some specificity, that Defendants were discriminating against her based on age and gender. *See Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) ("Plaintiff has certainly pled facts showing that Fordham was aware of her protected activity, since she alleges that she complained directly to a university employee.").

Months later, Defendants would extend her probation and deny her tenure—which, as already established, constitutes an adverse employment action that satisfies the third requirement for the age and sex discrimination retaliation claims.  *See Tolbert*, 790 F.3d at 435–36; *see also generally Vega*, 801 F.3d at 90 (finding that adverse employment action in the context of a retaliation claim "covers a broader range of conduct" and "is not limited to discriminatory actions that affect the terms and conditions of employment") (internal quotation marks omitted).

With regard to the fourth factor, "[a] retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id.* at 90. "At this early stage, [Plaintiff] is not required to plead specifics about the internal motivations of Department supervisors that [she] could establish only through discovery." *Quadir*, 39 F. Supp. 3d at 543. Defendants extended Plaintiff's probation and denied her tenure months after she had begun complaining that she had been discriminated against based on sex and age. Such allegations are sufficient to survive a motion to dismiss.

## 2. Disability Discrimination Retaliation

There can be no "retaliation for acts not yet taken." *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001); *see also Lyons v. New York*, No. 15 Civ. 3669 (NSR), 2020 U.S. Dist. LEXIS 97039, at *31 (S.D.N.Y. June 2, 2020) (finding no retaliation claim supported where the "purported adverse action occurred before the protected activity"). All three of Plaintiff's alleged adverse employment decisions took place on or before June 17, 2019—days before Plaintiff alleges that she complained that she was being discriminated against on account of her knee injury. *See* (Compl. ¶¶ 27, 40, 44, 46.)

Plaintiff points to just one potential adverse employment decision that occurred after she first complained about retaliation based on her knee surgery—a denial of her grievance on January 7, 2020. (Doc. 15, at 21.) However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). Even assuming the denial of Plaintiff's grievance constitutes an adverse employment decision, it occurred months after Plaintiff had already been denied tenure, had her probation extended, and received an excess letter, and almost a year since

she lost her ENL class and begun enduring harassment.  By January 2020, Plaintiff had already

undergone "an extensive period of progressive discipline," *id.* at 95—one that precludes me from

drawing a causal connection back to her July 19, 2019 complaint about her knee injury.

"[T]he retaliation inquiry under the [NYCHRL] is broader than its federal counterpart,"

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (internal

quotation marks omitted), thus meriting its own analysis.  "Under the CHRL, retaliation 'in any

manner' is prohibited, and '[t]he retaliation . . . need not result in an ultimate action with respect

to employment . . . or in a materially adverse change in the terms and conditions of

employment.'"  *Id.* (quoting N.Y.C. Admin. Code § 8–107(7)).  This more lenient standard,

however, does nothing to salvage Plaintiff's disability discrimination retaliation claim because it

does not remedy Plaintiff's inability to establish a causal connection.  *See generally Shih*, 2013

WL 842716, at *8–9.

## V.   Conclusion

Accordingly, it is hereby:

ORDERED that Defendant's motion to dismiss Plaintiff's complaint is GRANTED as to

the (1) Seventh, Eighth, Ninth and Twelfth Causes of Action; (2) Second, Third, Fifth, and Sixth

Causes of Action as they relate to claims accruing before June 14, 2019; and (3) Thirteenth and

Fourteenth Causes of Action as they relate to Plaintiff's retaliation claims based on disability

discrimination.

IT IS FURTHER ORDERED that Defendant's motion to dismiss Plaintiff's complaint is

DENIED as to the (1) First, Fourth, Tenth, and Eleventh Causes of Action; (2) Second, Third,

Fifth, and (3) Sixth Causes of Action as they pertain to claims accruing after June 14, 2019; and

(4) Thirteenth and Fourteenth Causes of Action as they relate to Plaintiff's retaliation claims

based on age and sex or gender discrimination.

   The Clerk is directed to close the open motion at Document 10.

 SO ORDERED.

Dated: April 15, 2021
   New York, New York

           Vernon S. Broderick
          United States District Judge